IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MICHAEL HUGHES, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | 15-CV-3114 |
| JACQUELINE MITCHELL, et al., | ) | |
| Defendants. | ) | |

**OPINION**

**SUE E. MYERSCOUGH, U.S. DISTRICT JUDGE.**

Plaintiffs, all detainees in the Rushville Treatment and Detention Center, pursue claims for lack of adequate dental care. There are nine Plaintiffs, five of whom were consolidated into this case from case number 15-cv-3127.

There are also separate claims by Plaintiff Hughes regarding retaliation, indifference to Plaintiff Hughes' mental disorder, and the violation of Plaintiff Hughes' right to petition for redress of grievances. These claims originally proceeded in a separate case, 15-cv-3151, and were then consolidated into this case.

Before the Court are summary judgment motions by all the Defendants except for Defendant Mitchell (a dentist) and Defendant

Wexford (Mitchell's employer). Summary judgment on the dental claims is denied for the reasons explained below. Summary judgment on Plaintiff Hughes' separate claims is granted except as to Plaintiff's retaliation claim, which will be severed and proceed in a separate case.

## Dental Claims

Plaintiffs maintain that they all suffered serious dental problems or pain as a result of the understaffing of dental service providers at Rushville. They argue that, "[b]ased on the evidence contained within the record, a jury could find that Defendants made the decision to ignore the understaffing and deficient operation of the dental department at Rushville TDF, with purposeful, knowing, or reckless disregard of the consequences." (d/e 109, p. 32.)

Defendants Scott (Rushville's Director), Bednarz (Rushville's former Medical Director), and Walker (Rushville's former Director of Nursing) move for summary judgment.

Defendants Scott and Bednarz argue that no evidence supports the conclusion that they knew of systemic understaffing and deficiencies in the provision of dental care. However, they provide no affidavits of their own. An inference arises from their positions

that they, along with anyone else working at Rushville, would have been aware of serious understaffing and systemic problems with the provision of adequate dental care. Defendant Dr. Mitchell, the only dentist, was purportedly working 20 hours a week to provide services for nearly 600 residents, cramming that time into unreasonably long hours, performing dental work at 1:00 a.m.[1] (Pegues Dep. 8; Rogers Dep. 59.) According to Plaintiffs, Dr. Mitchell, either through incompetence or the sheer inability to meet the volume of the need, extracted teeth that could have been saved, sometimes without taking x-rays, extracted the wrong teeth, and cracked teeth during procedures. (Pegues Dep. 8 ("I had teeth pulled out of my head that was not really bad."); Paige Dep. 28-30, 34, 39)(pulled one tooth unnecessarily and pulled wrong teeth without taking x-rays); Hughes Dep. 13-15 (tried to pull two teeth that were fine). Several Plaintiffs testified that they were afraid to go back to Dr. Mitchell after these experiences and have refused to do so. (Swanson Dep. 27-28)(frightened to agree to treatment by Dr. Mitchell because Dr. Mitchell had purportedly cracked a tooth while

---

[1] Dr. Mitchell's hours were increased to 40 hours per week in August 2017. (d/e 110, p. 12.)

trying to fill the tooth, making the tooth hurt more.) Some simply gave up requesting dental care because the wait was so long as to be futile. (Steward Dep. 31.) Further, Plaintiff Hughes purportedly spoke directly to Defendant Bednarz about the problem as well as sending a grievance directly to Defendant Scott. (Hughes Dep. 19, 88, 89.) A reasonable inference arises that there was an obviously serious problem of which Defendants Bednarz and Scott had to have been aware.

Therefore, Defendants Bednarz and Scott have not met their burden on summary judgment. Defendants do make some good points about the lack of damages as to Plaintiffs, but a reasonable inference arises that Plaintiffs did suffer some harm as a result of deficient dental care and systemic understaffing. The amount of harm suffered is for the jury to decide.

Defendants Bednarz and Scott are also not entitled to qualified immunity. They do not dispute Plaintiff's contention that the dental services at Rushville were woefully inadequate or that Defendants knew about this, could have taken action, and failed to do so. Defendants' argument is focused on the lack of personal responsibility and respondeat superior liability. The Court has

rejected the personal responsibility argument, and Plaintiffs do not seek to hold Defendants liable on the basis of respondeat superior.

Defendant Walker also moves for summary judgment. She is a registered nurse who worked as the Director of Nursing during the relevant time. Plaintiffs' claim against Walker is based on Walker's alleged "failure to take any action about the insufficient dental staffing and procedures for obtaining dental care at Rushville TDF." (d/e 110, p. 10.)

Defendant Walker focuses on her lack of personal responsibility in processing requests for dental care and her lack of authority over the contractual hours provided by Wexford employees to Rushville.

Plaintiffs assert that Defendant Walker knew about the understaffing and knew that some requests for dental care were not being answered. Plaintiffs also assert that Defendant Walker was Dr. Mitchell's direct supervisor and knew that Dr. Mitchell was unable to meet the residents' dental needs. Defendant Walker testified that she supervised Dr. Mitchell "somewhat," in that "[i]f there is something that needs to be discussed with her, then I will discuss it with her. For the most part, I try to let my regional

manager supervisor her. If there is an issue at the facility, then I will discuss it with her, as well . . . ." (Walker Dep. 12-13.)

A reasonable inference arises on the evidence offered by Plaintiffs that Defendant Walker knew about the staffing shortage and knew that residents' dental needs were not being met. An inference also arises that Defendant Walker knew that some residents complained that they were not receiving responses to their requests for dental care. There is no dispute that Defendant Walker could not increase the contractual hours provided by Wexford, but arguably she could have notified someone with that authority that the hours needed to be increased. She could have talked to Dr. Mitchell about Dr. Mitchell's spreading herself too thin over her private practice, work for prisons, and work for Rushville. (Dr. Mitchell's Dep. 34-36.) Expecting to be able to provide competent dental services at 1:00 or 2:00 a.m. is arguably an unrealistic expectation. Defendant Walker also could have looked into whether the dental requests were arriving at their destination and whether they were being processed properly. Additionally, the Court is confused about where the nurses' duties stop because Dr. Mitchell filed an affidavit in <u>Smego v. Adams</u>, 08-cv-3142, stating that the

nurses prepare a list of patients for Dr. Mitchell to see. Smego v. Adams, 18-cv-3142, Mitchell Aff. d/e 117-3, ¶ 5. Summary judgment is denied for Defendant Walker.

### Plaintiff Hughes' Separate Claims

In May 2015, Plaintiff filed a lawsuit against Defendants Hougas, Scott, and Simpson. Hughes v. Scott, 15-cv-3151 (C.D. Ill.). Plaintiff alleged that his grievances were not being answered and acknowledged. Further, Defendant Scott forwarded to Defendant Simpson a letter Plaintiff had sent to Scott complaining about Simpson's failure to answer Plaintiff's grievances. After Simpson received the letter, Plaintiff was summoned to a room where Defendants Simpson and Hougas asked Plaintiff why he filed grievances and lawsuits, told Plaintiff he was "ignorant" and "stupid" for filing grievances and lawsuits, and told Plaintiff his life would improve if he filed fewer grievances and lawsuits. (Merit Review Order in 15-cv-3151.)

This Court dismissed case 15-cv-3151 for failure to state a claim, reasoning that no constitutional right exists to a grievance procedure and that the name-calling and vague threats made by

Defendants Hougas and Simpson were not sufficiently adverse to give rise to a constitutional claim.

The Seventh Circuit reversed this Court's dismissal, finding that Plaintiff Hughes stated a First Amendment retaliation claim:

> Hughes alleges that after he filed the grievances Simpson summoned him to a meeting with herself and Hougas and at the meeting yelled at him and told him that he was "ignorant" and "stupid" and a "moron" and that his life at Rushville would go better if he stopped complaining (a statement that could well be thought a threat). His grievances were never answered, and whenever Hougas crossed paths with Hughes she called him "ignorant."
>
> . . . We are mindful that for retaliation for filing petitions to be actionable, the means of retaliation must be sufficiently clear and emphatic to deter a person of "ordinary firmness" from submitting such petitions in the future. . . .(citations omitted). *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir.2000), suggests that "simple verbal harassment" of a prisoner does not suffice, and *Antoine v. Uchtman*, 275 Fed.Appx. 539, 541 (7th Cir.2008), that even threats may not suffice. But the abuse to which Hughes was subjected by the defendants and the warning that his life would be better if he stopped filing grievances went beyond simple verbal harassment.

Hughes v. Scott, 816 F.3d 955, 956 (7th Cir. 2016). The Seventh Circuit also stated that Plaintiff Hughes might not be a person of "ordinary firmness" given the reason for his detention. The Seventh

Circuit found that the fact the Plaintiff Hughes had continued to engage in some First Amendment protected activity was not dispositive. Id. The case was remanded for this Court to "make sense of the conduct of the defendants and their institution, and to determine whether they are in fact improperly impeding the plaintiff's constitutional right to petition for redress of grievances." Id.

On remand, this Court defined the claims proceeding as constitutional claims for retaliation, hindrance of Plaintiff's right to petition for redress of grievances, and deliberate indifference to Plaintiff's mental disorder. (15-cv-3151, 4/8/16 text order.) Defendants Scott, Simpson, and Hougas now move for summary judgment on these claims.

As to the retaliation claim, summary judgment must be denied based on the Seventh Circuit's reversal. Plaintiff offers no evidence that he is not a person of ordinary firmness, but the Seventh Circuit already found that the purported conduct of Defendants Simpson and Hougas was sufficiently adverse to deter a person of ordinary firmness from pursuing protected First Amendment activities. That Plaintiff was in fact not deterred is not dispositive. The purported

retaliation includes the name-calling, threats, and refusal to process Plaintiff's grievances.

Defendant Scott asserts that the evidence does not support a retaliation claim against him because all he did was refer Plaintiff's letter complaining about Simpson to Simpson to handle. Defendant Scott can certainly delegate the handling of the letter, but why to the person about whom the letter complains? A grievance against an individual normally would not be handled by that individual in order to avoid what purportedly happened here. In any event, Defendant Scott does not submit an affidavit explaining the reason for delegating the handling of the letter to Simpson. Summary judgment is not appropriate without affidavits from the moving parties, nor is qualified immunity.

The Court does agree that Plaintiff has no evidence to support a petition for redress claim or a claim for indifference to his serious mental disorder. These claims are based on the same allegations as Plaintiff's retaliation claim. Plaintiff does not dispute that he was never prevented from filing grievances. Nor does he have evidence that Defendants' conduct amounted to indifference to his mental disorder.

**IT IS ORDERED:**

1. The motion for leave to file excess pages is granted. (d/e 99.)

2. The motion for summary judgment by Defendants Bednarz, Hougas, and Scott is granted in part and denied in part. (d/e 100.) Summary judgment is denied to Defendants Bednarz and Scott on Plaintiff's dental claims. Summary judgment is denied to Defendants Hougas and Scott on Plaintiff Hughes' retaliation claim. Summary judgment is granted to Defendant Hougas and Scott on Plaintiff's petition claim and claim for indifference to Plaintiff's mental disorder.

3. Defendant Walker's motion for an extension to file a summary judgment motion is granted. (d/e 105.)

4. Defendant Walker's motion for leave to file a late reply is granted over Plaintiffs' objection. (d/e 123.)

5. Defendant Walker's motion for summary judgment is denied. (d/e 107.)

6. The motion for summary judgment by Defendant Simpson is granted in part and denied in part. (d/e 102.) Summary judgment is denied to Defendant Simpson on

Plaintiff Hughes' retaliation claim. Summary judgment is granted to Defendant Simpson on Plaintiff Hughes' petition claim and claim for indifference to his mental disorder.

7. The motion to bifurcate is granted. (d/e 98.) Plaintiff Hughes' retaliation claims against Defendants Simpson, Hougas, and Scott are severed into a new case.

8. The Doe defendants are dismissed without prejudice because they have not been identified.

9. The motion for sanctions against Defendant Hughes is denied. (d/e 112.) Defendants may seek to impeach Defendant Hughes with his purported inconsistent statements at trial, but those inconsistencies do not arise to sanctionable behavior.

10. The clerk is directed to open a new case with Michael Hughes as the Plaintiff and Sandra Simpson, Sally Hougas, and Gregg Scott as Defendants. The clerk is directed to file this order in the new case. Attorney Pliura will be listed as counsel for Plaintiff Hughes in the severed case, subject to a motion to withdraw by Mr. Pliura. This case proceeds on the

dental claims against Defendants Mitchell, Wexford, Scott, Bednarz, and Walker.

11. The clerk is directed to terminate Defendants Simpson and Hougas from this case.

12. The clerk is directed to terminate the Doe defendants.

13. The final pretrial conference in this case is set for June 21, 2019, at 10:00 a.m. Plaintiffs and their counsel will appear by video conference. Defense counsel will appear in person.

14. The jury trial in this case will begin Tuesday, July 16, 2019, at 9:00 a.m. Magistrate Judge Schanzle-Haskins will pick the jury, with the consent of the parties, on Monday, July 15, 2019 at 1:30 p.m.

15. The Court will send out proposed jury instructions for discussion at the final pretrial conference. By June 13, 2019, the parties shall file: 1) an agreed proposed final pretrial order in substantially the same form as the sample attached as Appendix 2-1 to the Central District of Illinois Local Rules (www.ilcd.uscourts.gov); 2) alternate or additional proposed

jury instructions (not duplicative of the Court's); 3) motions in limine (to be orally argued at the final pretrial conference); and 4) proposed voir dire questions that are additional to the Court's standard voir dire (set forth on the District's website under Orders and Rules by Judge).

16. The clerk is directed to issue a video writ for the final pretrial conference.

ENTER: 03/07/2019

FOR THE COURT:

**s/Sue E. Myerscough**
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE